**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-886 |
| | § | |
| HEARTS WITH HOPE FOUNDATION, | § | |
| | § | |
| *Defendant*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are a motion for summary judgment (Dkt. 14) filed by plaintiff

Colony Insurance Company ("Colony") and a cross-motion for summary judgment (Dkt. 22) filed

by intervenor Texas Mutual Insurance Company ("Texas Mutual"). Having considered the motions,

responses, replies, record evidence, and applicable law, the court is of the opinion that Texas

Mutual's motion should be GRANTED and Colony's motion should be DENIED.

**I. BACKGROUND**

**A.      Factual and Procedural Background**

This case involves Colony's alleged duty to defend an underlying lawsuit.[1]   Dkt. 1.   In that

suit, Vance and Karen Anderson sued defendant Hearts with Hope Foundation ("Hearts with Hope")

as guardians and next friends of their child, VA. Dkt. 14-1 at 2.  The Andersons allege that Karen

Anderson worked for Hearts with Hope, an organization that provides care for children with mental

and emotional disturbances.  *Id.* at 3.   On January 18, 2015, Hearts with Hope assigned

Anderson—pregnant at that time—to dispense medication to children in its care.  *Id.* at 4.   While in

---

[1]The case is currently pending in the 215th Judicial District Court of Harris County, Texas.

the medicine room, a child hit her in the stomach, "causing her amniotic sac to rupture and causing injury to VA." *Id.* The Andersons allege that "[a]s a result of these injuries," VA was born prematurely and suffered severe physical and emotional injuries. *Id.*

Hearts with Hope tendered the Andersons' claim to Colony and Texas Mutual. Dkt. 17 at 5; Dkt. 16 at 5. Texas Mutual is currently defending the underlying lawsuit, but Colony denied coverage. Dkt. 16 at 5. Both Colony and Texas Mutual issued an insurance policy to Hearts with Hope. Dkt. 14 at 7; Dkt. 16 at 5. Colony's policy included commercial general liability ("CGL") and professional liability ("PL") coverage. Dkt. 14-2 at 25, 29.

In the instant suit, Colony seeks a declaratory judgment that it does not owe a duty to defend or indemnify Hearts with Hope. Dkt. 1. Texas Mutual intervened as a defendant and counter-plaintiff, asserting that Colony has such a duty. Dkt. 10; Dkt. 19. Colony filed its motion for summary judgment, asking the court to declare that its policy does not cover the underlying lawsuit. Dkt. 14. Texas Mutual filed a cross-motion for summary judgment, asking the court to declare that Colony must share in Hearts with Hope's defense. Dkt. 22.

**B.    Colony's Policy**

The general provisions of Colony's policy provide that Colony "will have the right and duty to defend the insured against any 'suit' seeking 'damages' to which this insurance applies." Dkt. 14-2 at 11. However, the policy excludes any claim "[b]rought by any insured against any other insured." *Id.* at 16.

Under the policy's CGL coverage, Colony must pay "'damages' because of 'bodily injury' . . . to which this insurance applies." *Id.* at 29. The policy does not apply to a claim:

> Based upon or arising out of "bodily injury" to:
>     (1) an "employee" of the insured arising out of and in the course of:
>         (a) employment by the insured; or

> (b) performing the duties related to the conduct of the insured's business; or
>
> (2) the spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

*Id.* at 32.

Under the policy's PL coverage, Colony must pay "'damages' because of a 'wrongful act' to which this insurance applies." *Id.* at 25. "Wrongful act" is defined as:

> an act, error or omission in the rendering of or failure to render "professional services" by any insured covered under this Policy and performing the operations described under BUSINESS DESCRIPTION in the Declarations including an act, error or omission resulting in the violation of any right guaranteed to your resident under state or federal law or guidelines regulating your business as a resident health facility.

*Id.* at 24. "Professional services" means providing:

> a. medical, surgical, dental, x-ray, mental health or nursing service or treatment, or the furnishing of food or beverage in connection with such service or treatment;
> b. medications, medical supplies or medical appliances;
> c. health or therapeutic service, treatment or advice;
> d. counseling or social service;
> e. postmortem handling of human bodies including organ or tissue recovery; and
> f. services undertaken for your formal accreditation, standards review or equivalent professional board or committee for any insured while:
>> (1) evaluating the professional qualifications or clinical performance or any providers of "professional services"; or
>> (2) promoting and maintaining the quality of "professional medical services" being provided; including the executing, or failure to execute a decision or directive of your formal accreditation, standards review or equivalent professional board or committee.

*Id.*

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

A court shall grant summary judgment when a "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). If the party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c). The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dall.*, 529 F.3d 519, 524 (5th Cir. 2008).

"'On cross-motions for summary judgment, [the court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

**B.     Duty to Defend**

Under Texas law, courts follow the "eight corners" rule to determine whether an insurer has a duty to defend. *Federated Mut. Ins. Co. v. Grapevine Excavation Inc.*, 197 F.3d 720, 723 (5th Cir. 1999). "Under this rule, courts compare the words of the insurance policy with the allegations of the plaintiff's complaint to determine whether *any* claim asserted in the pleading is potentially within the policy's coverage." *Id.* "The duty to defend analysis is not influenced by facts ascertained before the suit, developed in the process of litigation, or by the ultimate outcome of the suit." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004). Rather, it is determined by examining the eight corners of the pleadings and the policy. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). All doubts with regard to the duty to defend are resolved in favor of

the duty.  *Id.*  Courts applying the eight corners rule "give the allegations in the petition a liberal interpretation."  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  Courts must not, however, "read facts into the pleadings, . . . look outside the pleadings, or imagine factual scenarios which might trigger coverage."  *Id.* at 142.

The insured has the burden of showing that a claim is potentially within the coverage of the policy.  *Federated Mut. Ins. Co.*, 197 F.3d at 723.  "[H]owever, if the insurer relies on the policy's exclusions, it bears the burden of proving that one or more of those exclusions apply."  *Id.*  Courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent."  *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) (internal quotations omitted).  However, the "rules favoring the insured . . . are applicable only when there is an ambiguity in the policy;  if the exclusions in question are susceptible to only one reasonable construction, these rules do not apply."  *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 701 (5th Cir. 1996).

### III. ANALYSIS

Colony argues that it is entitled to summary judgment because the Andersons' claim is not covered by the policy's CGL coverage or PL coverage and because the insured versus insured exclusion applies.  Dkt. 14 at 2.  Colony also argues it has no duty to indemnify Hearts with Hope.  *Id.*  Texas Mutual argues that it is entitled to summary judgment because the Andersons' claim falls within both CGL and PL coverage and no exclusion applies.  Dkt. 22 at 2.  The court will consider each argument in turn.

### A.    Commercial General Liability Coverage

The only issue regarding CGL coverage is whether VA's bodily injuries occurred "as a

consequence" of Karen Anderson's bodily injury. If so, the CGL coverage exclusion clearly

applies.[2] Further, because the disputed provision is an exclusion, Colony bears the burden to prove

that the exclusion applies. *Federated Mut. Ins. Co.*, 197 F.3d at 723.

Under the "eight corners" rule, the court must consider the policy language and the

allegations in the Andersons' pleadings. *Id.* The state court petition alleges that a child "hit Karen

Anderson . . . in the stomach, causing her amniotic sac to rupture and causing injury to VA." Dkt.

14-1 at 4. Then,

> [a]s a result of these injuries, Karen Anderson was hospitalized to enable
> physicians to closely monitor her and VA and allow VA to continue to
> develop in-utero. Ultimately, as a result of these injuries, VA was born
> prematurely on or about February 8, 2015, at only 24 weeks' gestation. As
> a result, VA has suffered physical and emotional injuries and pain and
> suffering . . . .

*Id.*

The parties agree that if the petition fails to allege a direct injury to VA, the exclusion will

apply. *See, e.g.,* Dkt. 16 at 12. Colony argues that because VA was in utero, any injury was

necessarily a consequence of Anderson's injury. Dkt. 26 at 2. Texas Mutual argues that because the

petition states that the initial impact "caus[ed] injury to VA," there is a potentially direct injury

alleged. Dkt. 22 at 11. As the parties note, there is a dearth of cases on point.

Colony cites *Oates By Oates v. State*, a New York court of claims case involving

substantially the same policy language. 597 N.Y.S.2d 550, 554 (Ct. Cl. 1993). In *Oates*, the plaintiff

---

[2]A claim is excluded if it "aris[es] out of 'bodily injury'" to:
        (1) an "employee" of the insured arising out of and in the course of:
            (a) employment by the insured; or
            (b) performing the duties related to the conduct of the insured's business; or
       (2) the spouse, child, parent, brother or sister of that "employee" as a consequence
       of Paragraph (1) above."
Dkt. 14-2 at 32.

alleged a fetus suffered from lead poisoning while in utero. *Id.* at 555. According to that court, "inasmuch as she was in utero during the alleged poisoning, we fail to see how she could have been injured without her mother having been subjected to the same poisonous condition, and her body serving, albeit involuntarily, as a conduit therefor. A fortiori, [the fetus's] bodily injury resulted . . . from her mother's injury." *Id.* Colony argues that the rupture of Anderson's amniotic sac "caused injury to VA, who was ultimately born prematurely." Dkt. 14 at 17. Thus, under Colony's reasoning, VA was only injured because Anderson was first injured, like in *Oates*.

Hearts with Hope distinguishes *Oates* by arguing that Anderson did not serve as a conduit for an external condition. Dkt. 17 at 13. "Instead, the allegations can be reasonably interpreted to show that being 'hit' by the child at Hearts with Hope caused direct injuries to VA that were not a result of Karen Anderson's injuries." *Id.*

Hearts with Hope and Texas Mutual argue that the court should follow an Illinois case that found a duty to defend in a similar situation. *See Royal Ins. Co. of Am. v. Insignia Fin. Grp., Inc.*, 751 N.E.2d 164, 173 (Ill. App. Ct. 2001). *Royal* involved in utero injuries sustained when a mother received an electric shock at work. *Id.* at 167. The pleadings alleged that "[t]he electric shock traveled through [the mother's] uterus and shocked [the fetus] as well. [The fetus] suffered brain damage as a result of the electric shock." *Id.* The insurer argued that *Oates* applied because the injuries to the fetus occurred as a result of the mother's electric shock and were thus consequential. *Id.* at 173. That court rejected *Oates*, holding that the complaint did not preclude a direct injury and that the claim was potentially within the coverage provisions. *Id.* Hearts with Hope and Texas Mutual argue that a reasonable reading of the petition does not preclude a direct injury to VA, even if it also alleges consequential injuries. Dkt. 17 at 10; Dkt. 22 at 14–15.

Colony argues that *Royal* does not control because *Royal* involved "direct contact with the fetus." Dkt. 26 at 3. Colony notes that the complaint in *Royal* stated that "[t]he electric shock traveled through [the mother's] uterus and shocked [the fetus] as well." *Id.* (quoting *Royal*, 751 N.E.2d at 167)). Colony argues that in the instant case, there is no allegation of direct contact, and direct contact between the child who struck Anderson and VA was not possible. *Id.* Thus, "there was no way for VA to be injured without injury to Anderson." *Id.*

The court finds *Royal* persuasive. Colony proposes that the rupture to the amniotic sac caused VA's injury. Dkt. 14 at 17. However, the petition cannot be viewed that narrowly. *Nat'l Union*, 939 S.W.2d at 141 (Courts must "give the allegations in the petition a liberal interpretation."). The petition states that the hit to the stomach caused Anderson's amniotic sac to rupture *and* caused VA to be injured. Dkt. 14-1 at 4 (emphasis added). Thus, the petition does not preclude a direct injury as it alleges that the hit caused VA's injury. While Colony argues this is unreasonable, the court cannot simply disregard the language in the petition.[3] *See Nat'l Union*, 939 S.W.2d at 141. It may be a close call, but the court only looks for a claim potentially within coverage and resolves all doubts in favor of the duty. *See Zurich*, 268 S.W.3d at 491.

Further, this ruling does not conflict with *Oates*. In *Oates*, the mother's injury caused the fetus to be injured. 597 N.Y.S.2d at 555. Colony argues that if the mother must be injured for the fetus to be injured, the fetus's injuries are consequential. Dkt. 26 at 3. But correlation does not equal causation, and "as a consequence" necessarily implies some form of causation.[4] *Consequence*,

---

[3] If the petition stated that the hit "caused the amniotic sac to rupture, which caused injury to VA," the court might decide the case differently. However, those are not the facts alleged.

[4] At the least, "as a consequence" is ambiguous and Hearts with Hope's construction (along with Texas Mutual's) is not unreasonable. *See Barnett*, 723 S.W.2d at 666 (Courts "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself

Black's Law Dictionary (10th ed. 2014). Undoubtedly, a mother will almost always suffer some injury if the fetus inside of her is injured by an external force. However, the mother's injury does not always *result in* the fetus's injury. And as explained above, the petition alleges that the hit caused VA's injury. Dkt. 14-1 at 4. Under a liberal reading of the petition, VA would have been injured even if Anderson's amniotic sac did not rupture. In *Oates*, the mother's injury (being poisoned) caused the fetus to be poisoned as well. 597 N.Y.S.2d at 555.

Colony also argues that even if the petition can be construed to allege a direct injury, the exclusion still applies because the Andersons also allege consequential injuries to VA. Dkt. 14 at 17. According to Colony, "'[a] claim need only bear an incidental relationship to the described conduct for the exclusion to apply'" when the exclusion applies to injuries "arising out of" particular conduct. *Id.* at 17 n.5 (quoting *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 458 (5th Cir. 2003)). Thus, Colony concludes that "the Andersons' claim 'arises out of' bodily injury that is a consequence of bodily injury to Karen Anderson, and the claim is excluded from coverage as a matter of law." *Id.* at 18.

Colony misapplies *Sport Supply*. The "arising out of" language in the policy refers to whether the claim arises out of bodily injury to VA. Dkt. 14-2 at 32. The parties agree that the Andersons' claim arises out of bodily injury to VA. Rather, the disputed policy language is whether VA's injuries arose "as a consequence" of Anderson's injury. *Id.* Colony attempts to apply the broad "arising out of" standard in *Sport Supply* to the "as a consequence" language at issue. The

---

unreasonable."). Hearts with Hope alleges that "as a consequence" requires Anderson's injuries to result in VA's injury. Dkt. 17 at 12. This construction is consistent with *Oates* and *Royal*.

9

court rejects this argument.[5] Further, "[i]f coverage is found for any part of a suit, the insurer must defend the entire suit." *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005). The court finds coverage due to the allegations of a direct injury, so Colony must defend the entire suit.

The policy language does not preclude the finding of a direct injury to VA. Thus, Colony cannot meet its burden to show that the exclusion applies. Because all doubts with regard to the duty are resolved in favor of the duty, Colony has a duty to defend under the CGL coverage of the policy.

**B.      Professional Liability Coverage**

The Andersons' claim falls within CGL coverage. Accordingly, the court need not consider whether the claim falls within PL coverage.

**C.      Insured Versus Insured Exclusion**

Colony argues that even if the Andersons' claims fall within CGL or PL coverage, the insured versus insured exclusion still precludes coverage. Dkt. 14 at 22. Colony asserts that Hearts with Hope and Karen Anderson both qualify as an insured, so the exclusion applies. *Id.* at 23. Texas Mutual and Hearts with Hope argue that the exclusion does not apply because the Andersons filed the lawsuit on behalf of VA, who is not an insured. Dkt. 17 at 24–26; Dkt. 22 at 19.

The policy provides an exclusion for any claim "[b]rought by any insured against any other insured." Dkt. 14-2 at 16. Assuming, without deciding, that Karen Anderson is an insured under the policy, the exclusion still does not apply. At best, the policy is ambiguous as to whether the

---

[5]The policy elsewhere uses the "arising out of" language—in fact, just a few words prior. Dkt. 14-2 at 32. Had the parties intended "as a consequence" to take on the same meaning as "arising out of," the policy could have provided that the exclusion applied to VA's injuries "arising out of an employee's injuries." But the policy uses different language, and the court must interpret the policy in a way that harmonizes and gives effect to each of its terms. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex. 1995).

provision applies when an insured brings a claim on behalf of a minor who is not an insured. The policy specifically addresses the treatment of children elsewhere. *Id.* at 32. Indeed, the heart of this dispute is whether a provision specifically addressing children applies. *See supra* Section III.A. Thus, the policy drafters contemplated how an employee's child may affect an exclusion, but chose not to address the issue in the insured versus insured exclusion.

Further, the court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Barnett*, 723 S.W.2d at 666. The court finds the construction urged by Hearts with Hope—that the provision only applies to claims brought by an insured on behalf of the insured—is not unreasonable. Thus, the exclusion does not apply.[6]

**D.      Duty to Indemnify**

Colony argues that it has no duty to indemnify Hearts with Hope for the same reasons that it has no duty to defend. Dkt. 14 at 24. Hearts with Hope and Texas Mutual argue that the determination on the duty to indemnify is not yet ripe. Dkt. 16 at 21; Dkt. 17 at 27. The court agrees that the issue is not ripe.

In Texas, an "insurer's duty to defend and duty to indemnify are distinct and separate duties." *Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). An "insurer may have a duty to defend but, eventually, no duty to indemnify." *Id.* The duty to indemnify is not ripe if coverage turns on facts actually proven in the underlying lawsuit. *Id.* at 84. However, the issue "is

---

[6]To the extent Colony argues that Karen Anderson also brought a claim on her own behalf, the court finds the pleadings unclear. However, the inquiry is irrelevant. "If coverage is found for any part of a suit, the insurer must defend the entire suit." *Allstate Ins.*, 400 F.3d at 263. The claim on VA's behalf is covered, so Colony must defend the entire suit.

justiciable . . . when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify*." *Id.* Given that Colony has a duty to defend, this rule is not applicable. Thus, the determination on the duty to indemnify is not ripe.

## IV. CONCLUSION

Colony has a duty to defend the underlying lawsuit. Thus, Colony's motion for summary judgment (Dkt. 14) is DENIED, and Texas Mutual's motion for summary judgment (Dkt. 22) is GRANTED.

Signed at Houston, Texas on February 28, 2018.

_____
Gray H. Miller
United States District Judge